IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MICHAEL ALLEN BITER, ID # 1012208,  )
          Petitioner,  )
vs.  )       No. 3:03-CV-0685-D
        )
DOUGLAS DRETKE, Director,  )
Texas Department of Criminal  )
Justice, Correctional Institutions Division,  )
         Respondent.  )

SUPPLEMENTAL
FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b) and an Order of Re-Reference dated September 28, 2005, subject cause has previously been referred to the United States Magistrate Judge. The supplemental findings, conclusions, and recommendation of the Magistrate Judge are as follows:

## I.  BACKGROUND

On May 25, 2000, the State indicted petitioner for robbery in Cause No. F00-23280-TN and aggravated robbery in Cause No. F00-23287-TN. *See* TR-23280[1] at 2; TR-23287[2] at 2. The indictments allege similar robbery offenses, except that the second offense allegedly involved an aggravating factor, *i.e.*, the use of a firearm during the commission of the robbery. *Compare* TR-23280 at 2 *with* TR-23287 at 2. At a hearing held on October 4, 2000, petitioner pled guilty to both offenses. *See* Rep.'s R., Vol. II at 5, 9 [hereinafter cited as RR-volume # at page]. In each case he judicially confessed that he committed the offense as alleged in the indictment. *See* TR-23280 at 16; TR-23287 at 10. With respect to the judicial confession entered in the aggravated robbery case, peti-

---

[1]  "TR-23280" refers to the trial records in Cause No. F00-23280-TN.

[2]  "TR-23287" refers to the trial records in Cause No. F00-23287-TN.

tioner specifically indicated that he used and exhibited "a deadly weapon, to-wit: a firearm." TR-23287 at 10. On November 3, 2000, the trial sentenced him to twenty years imprisonment for each offense and ordered the sentences to be served concurrently. RR-III at 3, 13; TR-23280 at 19; TR-23287 at 13.

Although petitioner appealed his convictions, he filed no petition for discretionary review. (*See* Pet. Writ of Habeas Corpus (Pet.) at 3.) He has, however, filed three state applications for writ of habeas corpus. *See* S.H. Tr.[3] at 2-18; S.H. Tr. II[4] at 2-10; S.H. Tr. III[5] at 2-10. His first state application challenged both convictions and raised four claims: (1) his conviction was obtained by use of a coerced confession and plea; (2) he received ineffective assistance of trial counsel when his attorney made no attempt to object to any proceedings, coerced him to make an open plea, made no attempt to show the court that he was mentally incompetent, filed no motions for discovery, and made no attempt to obtain probation for him; (3) his sentence was illegal because the court entered an affirmative finding of deadly weapon without evidence to support such finding; and (4) the evidence was insufficient to support the convictions. *See* S.H. Tr. at 2, 7, 11, 16-17, 20-23. His second and third state applications respectively challenged his robbery and aggravated robbery convictions

---

[3] "S.H. Tr." denotes the state habeas records attached to *Ex parte Biter*, No. 49,574-01, slip op. (Tex. Crim. App. June 27, 2001).

[4] "S.H. Tr. II" denotes the state habeas records attached to *Ex parte Biter*, No. 49,574-02, slip op. (Tex. Crim. App. Oct. 9, 2002). The Court notes that the records commence with petitioner's sixteen-page answer to the state's response to his state application for writ of habeas corpus filed in Cause No. F00-23280, followed by the state application. All citations to pages one through sixteen of S.H. Tr. II refer to the respective pages in the state application. The Court also notes that although these records reflect a challenge to petitioner's robbery conviction in Cause No. F00-23280, pages thirty-six through fifty relate to petitioner's aggravated robbery conviction in Cause No. F00-23287. This error makes no difference to the resolution of this action.

[5] "S.H. Tr. III" denotes the state habeas records attached to *Ex parte Biter*, No. 49,574-03, slip op. (Tex. Crim. App. Oct. 9, 2002). As with the previous volume, these records reflect a challenge to petitioner's aggravated robbery conviction in Cause No. F00-23287, but pages thirty-six through fifty relate to petitioner's robbery conviction in Cause No. F00-23280. This error likewise makes no difference to the resolution of this action.

on the same grounds:  (1) he received ineffective assistance of trial counsel when his attorney caused him to plead with a promise of probation, and (2) the trial court erred by failing to inform him that he was not eligible for probation on both charges.  *See* S.H. Tr. II at 3, 8, 12, 17; S.H. Tr. III at 2, 7, 11, 16.  The Texas Court of Criminal Appeals denied the first application without written order and denied the latter applications without written order on findings of the trial court without a hearing. *See Ex parte Biter*, No. 49,574-01, slip op. at 1 (Tex. Crim. App. June 27, 2001); *Ex parte Biter*, No. 49,574-02, slip op. at 1 (Tex. Crim. App. Oct. 9, 2002); *Ex parte Biter*, No. 49,574-03, slip op. at 1 (Tex. Crim. App. Oct. 9, 2002).

On February 28, 2003, petitioner commenced this action in the Southern District of Texas by placing it in the prison mail system.  (Pet. at 9); *see also Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) (recognizing that prisoners file their federal pleadings when they place them in the prison mail system).  In his federal petition, petitioner asserts that he is being held unlawfully because (1) his trial attorney rendered ineffective assistance by persuading him to plead guilty with a promise that he would receive probation and then failing to seek probation and (2) the trial court denied him due process by (a) failing to follow the plea agreement; (b) failing to properly admonish him regarding the availability of probation; and (c) failed to allow him to withdraw his pleas.[6]  (Pet. at 7.)

In April 2003, after receiving this action via transfer from the Southern District, this Court ordered respondent to file an answer.  Respondent filed an answer on July 17, 2003.  (*See* Answer at 1.)  Petitioner thereafter thrice moved to withdraw his petition without prejudice.  (*See* Mots. to Withdraw.)  On July 29, 2004, the Court denied the motions to withdraw because petitioner had

---

[6]  The petition also claims that the trial court "failed to grant the agreed probation."  (Pet. at 7.)  Because the Court considers such claim to be encompassed by the alleged failure of the trial court to follow the plea agreement, the Court does not list the claim separately.

3

not filed a stipulation of dismissal signed by all parties and because any later-filed action would potentially be procedurally-barred.  (*See* Order Denying Mots. Withdraw Pet. at 1-2.)

On April 20, 2005, the undersigned Magistrate Judge recommended that this action be denied because some claims were procedurally barred from federal habeas review and the remaining claims lacked merit.  (*See* Findings, Conclusions, & Recommendation dated Apr. 20, 2005, at 3-9 [hereinafter FCR].)  On May 11, 2005, the Court received petitioner's preliminary objections to the FCR and a request for extension of time to supplement his objections.  (*See* Petr.'s Obj'ns at 1-9 [hereinafter Obj'ns].)  On May 17, 2005, the Court granted the request to supplement.  (Order of May 17, 2005.)  On September 27, 2005, the Court received additional objections.  (*See* Petr. Biter's Obj'ns at 1-16 [hereinafter Supp. Obj'ns].)  The District Court noted that petitioner's September 27, 2005 objections appeared to raise new claims, stating:

> In his objections, he asserts a claim of ineffectiveness of appellate counsel that appears to be new and outside the scope of his habeas petition, alleged by way of objections and without seeking or obtaining leave of court to amend his habeas petition. He also offers evidence in support of a contention that his trial counsel was ineffective for failing adequately to investigate his history of mental illness.

(*See* Order of Re-reference.)  The District Court re-referred "this habeas matter to the magistrate judge to address petitioner's objections by way of supplemental findings, conclusions, and recommendation."  (*Id.*)  On October 11, 2005, the Court received an additional statement in support of petitioner's objections.  (*See* Statement from Patricia Biter received Oct. 11, 2005, [hereinafter Mother's Statement].)

Plaintiff asserts the following objections to this Court's recommendation that the District Court deny his federal petition for writ of habeas corpus: (1) background[7]; (2) exhaustion and procedural default; (3) standard of review; (4) involuntary plea; (5) ineffective assistance of trial counsel; (6) trial court error; (7) ineffective assistance of appellate counsel; and (8) evidentiary hearing. (Obj'ns at 2, 6-8; Supp. Obj'ns at 1-16.)[8] Before addressing these objections, however, the Court first considers whether petitioner raised new claims therein.

## II. NEW CLAIMS

Petitioner initially asserted two grounds for relief in the federal petition filed in this action. (*See* Pet. at 7.) Petitioner's first claim states in full: "The petitioner was denied the effective assistance of counsel when his attorney persuaded him to plea[d] guilty by telling him that he would receive a probation; then failed to move for that probation." (*Id.*) Petitioner alleged only the following facts to support his ineffective assistance claim:

> [(a)] My attorney, against my better judgement, persuaded me to plea[d] guilty by telling me I would receive a probation.

> [(b)] When I entered my plea, although I was eligible for a deferred probation, my attorney failed to move the court for a deferred probation.

(*Id.*)

Petitioner's second ground for relief alleges trial court error and states in full: "The petitioner was denied the due process of law when the court failed to follow the plea agreement, and failed to

---

[7] Although the September 27, 2005 objections contain a section entitled "Objection to Background," petitioner makes clear that he is only objecting to the failure to list his claim of ineffective assistance of appellate counsel as an issue in the background section of the FCR. This issue is therefore subsumed in the discussion of the ineffective assistance of counsel claim and will not be separately addressed.

[8] The Court does not address the objections in the order in which they were presented.

properly admonish the petitioner as to the availability of a probation." (*Id.*)  He provides only the following facts to support the second claim:

> [(a)]  The petitioner entered a guilty plea believing he was eligible for a regular probation based on his lawyer's advice.
>
> [(b)]  The court failed to admonish the petitioner that he was not eligible for a regular probation, failed to allow the petitioner to withdraw his plea, and failed to grant the agreed probation.
>
> [(c)]  Petitioner would have withdrawn his plea and proceeded to trial had he been given the opportunity.

(*Id.*)

Petitioner now argues in his supplemental objections that he also asserted a claim of ineffective assistance of appellate counsel in his federal petition.  (*See* Supp. Obj'ns at 1-2, 13-15.)  In particular, he contends that his appellate attorney should have raised his claims of ineffective assistance of trial counsel and a claim that the evidence was factually insufficient.  (*Id.* at 14.)  Furthermore, petitioner now characterizes the representation of his trial attorney as "substandard" because she (1) failed to adequately advise him regarding his plea and (2) failed to adequately investigate the facts of the case, including his history of mental illness, a possible insanity defense, and the fact that he used no firearm during the commission of the alleged crimes.  (*Id.* at 8-11.)  Based on a review of the relevant filings in this case, petitioner clearly did not previously assert a claim in his petition that his appellate attorney rendered ineffective assistance, and this claim is therefore new.  Comparison of his previous claims of ineffective assistance of trial counsel and his objections also reveals that petitioner has substantially broadened the scope of his ineffective assistance of trial counsel claim.  Because petitioner attempts to raise new claims in his objections, the Court must first determine whether he should be allowed to do so.

6

"In habeas corpus proceedings, as in other civil proceedings, claims can be added after filing of the pleadings only by amendment; under Fed. R. Civ. P. 15, amendment can be made after responsive pleadings have been filed 'only by leave of the court or by written consent of the adverse party.'" *Robinson v. Wade*, 686 F.2d 298, 304 (5th Cir. 1982). That petitioner presents his new claims within his objections to the FCR "is of no significance" because "[a]ttempts to raise new claims are governed by the rules of amendment, without regard to the characterization given the claims by the petitioner." *Id.* at 304 n.11. Although petitioner's failure to obtain leave of court or written consent of respondent in contravention of Fed. R. Civ. P. 15(a) precludes him from amending his petition at this stage of the litigation, the Court liberally construes his objections as implicitly requesting leave to amend his petition.[9]

Whether to grant leave to amend lies within this Court's sound discretion. *Robinson*, 686 F.2d at 304. Rule 15(a) directs the courts to freely grant leave to amend "when justice so requires." That standard guides the courts whenever a party seeks leave to amend. Despite the liberal standard for granting leave, the courts do not automatically grant leave whenever requested. *See Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993). The Supreme Court long ago set forth the standard for determining when justice requires granting a request to amend:

> In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies

---

[9] The Court notes that petitioner has not sought to amend his petition in a procedurally proper manner. Courts may properly consider whether the party seeking amendment has complied with all procedural requirements. *Shabazz v. Franklin*, 380 F. Supp. 2d 793, 798 (N.D. Tex. 2005) (recommendation accepted by District Court). Compliance with the rules of procedure is required of all parties, whether or not they are represented by counsel. *Id.* Petitioner has not "attach[ed] a copy of the proposed amended pleading as an exhibit" to his request for leave to amend as required by the local rules of this Court, specifically LR 15.1. He has not submitted "an original and a second copy of the proposed pleading" with the request for leave as required by that rule. "Such deficiencies are sufficient of themselves to deny" leave to amend the federal habeas petition filed in this action. *See id.*

> by amendments previously allowed, undue prejudice to the other party by virtue of
> allowance of the amendment, futility of amendment, etc. – the leave sought should,
> as the rules require, be "freely given."

*Whitmire v. Victus Ltd.*, 212 F.3d 885, 889 (5th Cir. 2000) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

"A litigant's failure to assert a claim as soon as he could have is properly a factor to be con sidered in deciding whether to grant leave to amend. Merely because a claim was not presented as promptly as possible, however, does not vest the district court with authority to punish the litigant." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) (quoting *Carson v. Polley*, 689 F.2d 562, 584 (5th Cir. 1982)). The courts may, nevertheless, deny leave to amend when new claims are "filed at a very late stage of proceedings", especially when "there is no showing that the claims had been exhausted in the state courts." *Robinson*, 686 F.2d at 304.

In this case, petitioner initially filed this action on February 28, 2003, but did not assert his new claims until he filed his objections to the April 20, 2005 recommendation on September 27, 2005. He proffers no reason for not raising the claims earlier, and nothing in the record indicates that he could not have raised the claims when he filed his original petition. Absent adequate explanation, presentation of new claims two and one-half years after filing a federal habeas petition, and after the issuance of an adverse recommendation, constitutes undue delay sufficient to deny petitioner leave to amend his original habeas petition.

Furthermore, because 28 U.S.C. § 2244 has a one-year statute of limitations applicable to habeas actions filed pursuant to § 2254, amendment to add petitioner's two new claims appears to be futile. For the new claims raised in the objections to be timely, they must relate back to the date of the original petition as contemplated by Fed. R. Civ. P. 15(c). *See Mayle v. Felix*, 125 S. Ct. 2562,

8

2566 (2005). Pursuant to Rule 15(c)(2), "[a]n amendment of a pleading relates back to the date of the original pleading when . . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."

As held in *Mayle*, an amendment to a federal habeas petition does not relate back pursuant to Rule 15(c)(2) and thus escape the one-year time limit, "when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." 125 S. Ct. at 2566. In other words, an amendment relates back "only when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in 'both time and type' from the originally raised episodes." *See id.* at 2571 (discussing the "time and type" definition of "conduct, transaction, or occurrence" that was ultimately accepted by the Supreme Court). "So long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order." *Id.* at 2574. Petitioner's newly raised claim of ineffective assistance of appellate counsel clearly differs in type and time from his claims of ineffective assistance of trial counsel. In fact, the alleged deficiencies do not even concern the same attorney. Further, his new claims regarding trial counsel's alleged failure to investigate appear separate and distinct, both in time and type, from persuading a client to plead guilty with promises of probation. Consequently, it does not appear that the new claims necessarily relate back to when petitioner filed his original petition. Thus, such claims appear untimely, and it would be futile to add them at this late date.

In conclusion, ample cause exists to deny petitioner leave to amend his federal petition to raise the new claims raised in his objections. Nevertheless, in an abundance of caution, the Court

9

proceeds to consider these claims as if petitioner had raised them in his initial petition.  The Court

first considers the ineffective assistance of appellate counsel claim.  Because a voluntary guilty plea

waives all non-jurisdictional claims of ineffective assistance of trial counsel except those relating to

the voluntariness of the plea, the Court will address the objections concerning the voluntariness of

petitioner's pleas before addressing all of his claims concerning trial counsel.

### III.  INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Petitioner objects that the FCR failed to list as an issue and to consider his claim of inef-

fective assistance of appellate counsel, and that this claim was properly exhausted.  (Supp. Obj'ns

at 1-2, 13-15.)  He contends that his appellate attorney should have raised his claims of ineffective

assistance of trial counsel and a claim that the evidence was factually insufficient.  (*Id.* at 14.)  The

Court first considers the issue of exhaustion and procedural bar.

### A.  Procedural Bar

In general, federal courts may not review a state court decision that rests on an adequate and

independent state procedural default unless the habeas petitioner shows "cause" for the default and

"prejudice attributable thereto" or demonstrates that the failure to consider the federal claim will

result in a "fundamental miscarriage of justice."  *Harris v. Reed*, 489 U.S. 255, 262 (1989).  When

the last state court to review a claim clearly and expressly states that its judgment rests on a pro-

cedural bar, the procedural default doctrine generally bars federal review.  *See id.*; *Lowe v. Scott*, 48

F.3d 873, 875 (5th Cir. 1995).  Furthermore, when a claim has not been reviewed by the state's high-

est court, this Court may find such claim procedurally barred.  *See Coleman v. Thompson*, 501 U.S.

722, 735 n.1 (1991).  The general rule that a state court must explicitly apply a procedural bar to

preclude federal review does not apply when a petitioner has not presented his claims to the highest

10

court of the state and the state court to which he would be required to present his claims would now find the claims procedurally barred. *Id.*

To present a claim to the highest state court means that the petitioner has fairly presented such claim to the correct court in a procedurally proper manner. *See Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982). One does not "fairly present" the substance of a particular claim by raising a claim based upon a different legal theory. *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001). "It is not enough that all the facts necessary to support the . . . claim were before the state courts or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (citation omitted). When a petitioner raises a claim on federal habeas review based upon a legal theory distinct from the theory relied upon in the state court, he has not properly presented the federal claim to the state courts. *See Wilder*, 274 F.3d at 259.

To find claims procedurally barred from federal habeas review, the Court must find that petitioner procedurally defaulted such claims; the state court either relied upon such default or would do so if the claim were now presented to it; and petitioner has not overcome the procedural bar by showing cause for and prejudice from such default, or by demonstrating that application of bar will result in a fundamental miscarriage of justice.

Petitioner specifically asserts that he has exhausted his claim that his appellate attorney rendered ineffective assistance. (*See* Supp. Obj'ns at 2.) Because he filed no petition for discretionary review following the affirmance of his convictions on direct appeal, he presented no claims to the Texas Court of Criminal Appeals through the direct appeal process. Furthermore, although he filed three state applications for writ of habeas corpus to challenge his convictions, a review of the claims raised in those applications reveals that he did not present this claim.

11

The failure to properly present this claims to the highest court in Texas constitutes a procedural default that could bar this Court from considering the claims on federal habeas review. *See In re Bagwell*, 401 F.3d 312, 315 (5th Cir. 2005); *Busby v. Dretke*, 359 F.3d 708, 724 (5th Cir.), *cert. denied*, 541 U.S. 1087 (2004). Were this Court to require petitioner to now present the defaulted claim to the Texas Court of Criminal Appeals, the claims would be subject to dismissal under the Texas abuse-of-the-writ doctrine, TEX. CODE CRIM. PRO. ANN. art. 11.07, § 4.[10] That doctrine "prohibits a second [state] habeas petition, absent a showing of cause, if the applicant urges grounds therein that could have been, but were not, raised in his first habeas petition." *Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997) (footnote omitted). "[A]rticle 11.07 § 4 is an adequate and independent state procedural ground to bar federal habeas review and . . . has been strictly and regularly applied since 1994." *Smith v. Johnson*, 216 F.3d 521, 523 (5th Cir. 2000). When such a state procedural ground exists, "federal courts ordinarily will not review questions of federal law." *Id.* Consequently, unless petitioner can overcome the procedural bar, the defaulted claims will not be further considered.

## B.  Exceptions to the Procedural Bar

To overcome the procedural bar, a petitioner must demonstrate "(1) cause for the procedural default and actual prejudice as a result of the alleged violation of federal law or (2) that failure to consider his claims will result in a fundamental miscarriage of justice." *Id.* at 524 (quoting *Pitts v. Anderson*, 122 F.3d 275, 279 (5th Cir. 1997)).

---

[10] Texas also has an abuse of writ doctrine specifically applicable to capital cases. *See* Tex. Code Crim. P. Ann. art. 11.071, § 5(a). No material difference exists between the rules or their analysis. *Emery v. Johnson*, 139 F.3d 191, 195 n.3 (5th Cir. 1997). The Court may thus freely cite to either capital or non-capital cases that address the abuse of writ doctrine.

### 1. *Cause and Prejudice*

Petitioner asserts that he has overcome the procedural default by showing cause for the default and resulting prejudice. (Obj'ns at 6-8.) He contends that he was unable to articulate his claims in a procedurally proper manner because of his mental illness. (*Id.* at 6.) Petitioner also contends that he was not competent to plead guilty, (*see* Supp. Obj'ns at 9), and that his "mental illness . . . has not in any way or means magically disappeared since his conviction; rather, in a most telling manner, [he] has regressed", (Obj'ns at 5). To document "the nature and history of his mental illness", petitioner attaches numerous documents to his supplemental objections. (*See* Supp. Obj'ns at 10 and Attach. A1 through Q.) He also submitted a statement from his mother that he "was mentally unable to assist in his own defense" and "was mentally unable to realize what was fact and what was not." (*See* Mother's Statement.)

A criminal defendant must be mentally competent to plead guilty. *Godinez v. Moran*, 509 U.S. 389, 396 (1993). A defendant is competent to stand trial when he has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam). The same standard applies when determining whether a defendant is competent to plead guilty. *Godinez*, 509 U.S. at 396-98. "The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the ability to understand the pro-

ceedings."[11]  *Id.* at 401 n.12.  Furthermore, "[a]s in any criminal case, a competency determination is necessary only when a court has reason to doubt the defendant's competence."  *Id.* at 402 n.13.

The trial court in this case requested that petitioner be examined to determine his competency to stand trial.  *See* TR-23280 at 10 (letter from Dr. Pittman to trial court).  Dr. Pittman submitted a psychiatric evaluation to the trial court in which he indicates that petitioner was competent to stand trial as of June 7, 2000, the date of the examination.  *See id.* at 11-12.  The doctor specifically concluded:  "In my opinion Mr. Biter does have a sufficient present ability to understand the proceedings against him.  He is also capable of cooperating with his attorney in formulating a defense with a reasonable degree of rational understanding.  In my opinion, Mr. Biter is competent to stand trial."  *Id.* at 11.

On October 4, 2000, defense counsel and the state magistrate signed petitioner's plea agreements and thereby indicated their view that petitioner was competent to plead guilty.  *See* TR-23280 at 15; TR-23287 at 9.  At the plea hearing held that same day, defense counsel indicated on the record that she felt that petitioner was mentally competent to plead guilty.  RR-II at 10.  After the petitioner indicated that he was "back on" his medication, the magistrate further explored his competency and understanding:

Court:          Medication?

Petitioner:     Yes, sir.

Court:          Have you understood everything that's gone on so far?

---

[11] "The purpose of the 'knowing and voluntary' inquiry, by contrast, is to determine whether the defendant actually does understand the significance and consequences of a particular decision and whether the decision is uncoerced." *Godinez*, 509 U.S. at 401 n.12.  Because of this difference, the Court considers the competency issue separately from the voluntariness of petitioner's pleas.

| | |
|---|---|
| Petitioner: | Yeah, Uh-huh.  Yes, sir. |
| Court: | All right.  You've been able to discuss the case with your attorney? |
| Petitioner: | Yes. |

*Id.*  Based on these answers, the magistrate accepted petitioner's pleas and found him competent to enter them.  *Id.*

At his November 3, 2000 sentencing hearing, petitioner provided additional information regarding his mental health issues.  *See* RR-III at 4-7.  He stated that he had been diagnosed with "Bipolar schizophrenic disorder" and was then taking six medications for the disorder but was taking no medication at the time of the offenses.  *Id.*  He explained that his "cognitive thinking is a lot clearer" when on his medication.  *Id.* at 8.

Based upon the proceeding record, the undersigned Magistrate Judge specifically found in the original FCR that "[t]he record reflects that Biter . . . was mentally competent."  (*See* FCR at 6.)  Although petitioner now submits numerous medical records and a statement from his mother that were not previously before the Court, (*see* Attach. to Supp. Obj'ns; Mother's Statement), these records do not provide a basis to alter the Court's finding that he was competent to plead guilty despite his mental health issues.  When he pled guilty, petitioner had a sufficient ability to consult with his attorney with a reasonable degree of rational understanding and had a rational as well as factual understanding of the proceedings against him.  Not only did his attorney believe he was mentally competent to plead guilty, but the trial court found him competent.  *See* TR-23280 at 15; TR-23287 at 9; RR-II at 10.  Moreover, a contemporaneous psychiatric evaluation indicates that petitioner was competent.  *See* TR-23280 at 11-12.

15

Despite his contentions, petitioner has not shown that any mental illness prevented him from asserting any of his defaulted claims in his three state writs. Moreover, the claims petitioner raised in his state writs belie the contention that a mental illness prevented him from asserting the defaulted claims. Because petitioner has not shown cause for the procedural default, the Court need not address whether he has shown prejudice.

## 2. *Fundamental Miscarriage of Justice*

Petitioner also asserts that he has overcome the procedural default by showing that the failure to consider the defaulted claims will result in a miscarriage of justice. (Obj'ns at 7.) He contends, in his objection to findings regarding the voluntariness of his plea, that he is actually innocent of the crime of which he was convicted. (*Id.*; Supp. Obj'ns at 5.)[12] He argues that he

> pled guilty to aggravated robbery when there was no weapon involved in the commission of offense. In both offenses at issue here, Petitioner used respectively a Crack-Pipe and a Magic-Marker. No weapon has ever been found or produced; neither has any witness deposed to affirmatively seeing a weapon. The modi operandi were similar in both instances. Petitioner only simulated a weapon. The complainant [sic] were not able to positively identify the object used, as they were hidden; one could only speculate as to their real nature.
> Thus Petitioner has made a showing of ACTUAL INNOCENCE. Petitioner is actually innocent of the offense of aggravated robbery, since the factual basis was never established. Petitioner did not employ a weapon in the commission of neither . . . offense.

(Supp. Obj'ns at 5.)

"To ensure that the fundamental miscarriage of justice exception would remain 'rare' and would only be applied in the 'extraordinary case,' while at the same time ensuring that the exception would extend relief to those who were truly deserving," the Supreme Court "explicitly tied" the

---

[12] Petitioner also contends that the trial court allowed him to plead guilty against the weight of the evidence despite a "severe mental illness." (Obj'ns at 7.) Because the focus of the manifest injustice inquiry lies with the actual innocence of the petitioner, the Court does not address this contention in the context of manifest injustice.

exception to the innocence of the petitioner. *Schlup v. Delo*, 513 U.S. 298, 321 (1995). Thus, in extraordinary cases where "a constitutional violation has probably resulted in the conviction of one who is actually innocent", the federal habeas courts may grant a petition for writ of habeas corpus despite an otherwise applicable procedural bar to the consideration of the alleged constitutional violation. *Id.* at 321, 327. A claim of actual innocence thus serves as "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Id.* at 315 (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).

A petitioner seeking to surmount a procedural bar to consideration of habeas claims based on a claim of actual innocence after being convicted at trial must establish

> that it is more likely than not that no reasonable juror would have found [the] petitioner guilty beyond a reasonable doubt. . . . "in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after trial."

*Id.* at 327-28 (quoting Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U. Chi. L. Rev. 142, 160 (1970)). This actual innocence standard

> does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty. It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do. Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.

*Id.* at 329.

Furthermore, to state a credible claim of actual innocence after trial, the petitioner must "support his allegations of constitutional error with new reliable evidence – whether it be exculpatory

scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.  Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful."  *Id.* at 324.  The Supreme Court explained the new evidence requirement as follows:

> Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.  However, if a petitioner . . . presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims.

*Id.* at 316.

In *Bousley v. United States*, 523 U.S. 614 (1998), the Supreme Court extended the actual-innocence exception to the procedural bar doctrine to convictions based upon guilty pleas.  *See* 523 U.S. at 623.  It held that the district courts may review a barred constitutional claim in collateral proceedings, if the petitioner[13] "can establish that the constitutional error in his plea colloquy 'has probably resulted in the conviction of one who is actually innocent.'"  *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).  Even in the context of a guilty plea, the petitioner "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him."  *Id.* (citation and internal quotation marks omitted); *accord United States v. Torres*,

---

[13]  Although the case arose in the context of a collateral proceeding pursuant to 28 U.S.C. § 2255, the Supreme Court refers to Bousley as "petitioner", rather than "movant", the designation generally given to those proceeding under § 2255.

163 F.3d 909, 912 & n.15 (5th Cir. 1999).  The Supreme Court specifically noted "that 'actual inno-cence' means factual innocence, not mere legal insufficiency."[14]  *Bousley*, 523 U.S. at 623.

Although *Bousley* did not directly specify whether the new evidence requirement of *Schlup* applies when a petitioner asserts manifest injustice after pleading guilty, the case presents no reason not to apply such requirement in the plea context.  After Bousley pled "guilty to 'using' a firearm in violation of 18 U.S.C. § 924(c)(1)", the Supreme Court "held in *Bailey v. United States*, 516 U.S. 137, 144, 116 S. Ct. 501, 506, 133 L. Ed. 2d 472 (1995), that § 924(c)(1)'s 'use' prong requires the Government to show 'active employment of the firearm.'"  *Bousley*, 523 U.S. at 616.  Bousley there-after "sought collateral relief . . . claiming that his guilty plea was not knowing and intelligent because he was misinformed by the District Court as to the nature of the charged crime."  *Id.*  The Supreme Court thus stated:

> Petitioner . . . maintains that his guilty plea was unintelligent because the District
> Court subsequently misinformed him as to the elements of [his] offense.  In other
> words, petitioner contends that the record reveals that neither he, nor his counsel,
> nor the court correctly understood the essential elements of the crime with which he
> was charged.  Were this contention proved, petitioner's plea would be, contrary to
> the view expressed by the Court of Appeals, constitutionally invalid.

*Id.* at 618-19.  In the specific context of manifest injustice or actual innocence, the Court held that "petitioner need demonstrate no more than that he did not 'use' a firearm as that term is defined in *Bailey*" and if, "on remand, petitioner can make that showing, he will then be entitled to have his defaulted claim of an unintelligent plea considered on its merits."  *Id.* at 624.

---

[14] The Fifth Circuit Court of Appeals has likewise held that the fundamental-miscarriage-of-justice exception is "con-fined to cases of actual innocence, 'where the petitioner shows, as a factual matter, that he did not commit the crime of conviction.'"  *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (quoting *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995)).

The *Bailey* decision armed Bousley with previously unavailable evidence that he had been misinformed about the essential elements of the crime to which he pled guilty and that he had not "used" a firearm as that term was utilized in the statute of conviction.  Thus, although *Bousley* does not specifically extend the new evidence requirement to the guilty plea context, such extension is consistent with the opinion.  In addition, the rationale for the requirement appears equally applicable in the plea context.  Consequently, despite the lack of specific extension, it appears reasonable to apply the new evidence requirement in such context.

No decision of the Fifth Circuit suggests that the new evidence requirement does not apply in the plea context.  In fact, although the Fifth Circuit has not directly held that the new evidence requirement applies in that context, the concurring opinion in *Torres* supports finding its applicability in such context.  After recognizing that, under *Schlup*, claims of actual innocence are only credible when supported by new, reliable evidence, Judge Dennis stated:

> In *Bousley* the Supreme Court indicated that the habeas petitioner who would state a claim of actual-innocence of a guilty plea conviction must plead or point to facts which, if proven, show that his guilty plea was constitutionally invalid and that he is probably innocent of that crime.  The *Bousley* court clearly suggested that, before a defendant may ask a habeas court to apply the actual-innocence exception in adjudicating his successive or procedurally defaulted constitutional claim after his guilty plea conviction, the defendant must first allege facts and/or point to facts referred to in the record which, if proven, show that his guilty plea was not constitutionally valid. . . . *Bousley* also implies that the petitioner must allege or point to facts which, if proven, demonstrate that he is probably not culpable of the crime to which he pleaded guilty.

163 F.3d at 914-15 (Dennis, J., concurring).  It thus appears reasonable to proceed as though the new evidence requirement applies in the guilty plea context.

Consistent with *Bousley* and *Torres*, petitioners who assert manifest injustice after pleading guilty must present new evidence to support their claims of innocence.  Such requirement is consist-

ent with unpublished decisions of this Court.  *See Jones v. Cockrell*, No. 3:01-CV-0837-D, 2002 WL 31455604, at *5 (N.D. Tex. Oct. 30, 2002) (accepting findings and recommendation of magistrate judge, which noted that the petitioner had "failed to show any new evidence, not presented at trial, that he is actually innocent" while also determining that the petitioner had not shown himself to be actually innocent); *Smith v. Cockrell*, No. 3:02-CV-0503-M, 2002 WL 1268016, at *2 (N.D. Tex. June 3, 2002) (accepting findings and recommendation of magistrate judge, which indicates that petitioners must support claims of actual innocence with new reliable evidence not available for use at trial even in context of a guilty plea); *Pannell v. Cockrell*, No. 3:01-CV-1931-L, 2002 WL 1155860, at *3-4 (N.D. Tex. May 29, 2002) (same).

Petitioner in this case has presented no new evidence of his innocence.  He merely relies upon the statements he made at sentencing that he did not use a weapon in either of the offenses to which he pled guilty.  From the statements made at sentencing, it is obvious that petitioner could have pursued his theory of innocence at that time in lieu of pleading guilty to the aggravated robbery offense.  Petitioner chose not to pursue that theory at that time.  Without some new evidence of his innocence, petitioner cannot establish that he is actually innocent.  He thus cannot use his claim of actual innocence as a gateway through which he may bring his defaulted claims.

Furthermore, considering all of the evidence that could have been presented at trial, petitioner has not shown himself to be actually innocent of either of the crimes to which he pled guilty.  Petitioner has not shown that, factually, he did not commit the crimes for which he was convicted.  He has not shown it more likely than not that no reasonable juror would have convicted him.  He does not contest either robbery, but instead contends that no weapon was involved in either offense despite a signed judicial confession that he used a firearm in one offense.  He presents nothing to

21

support such contention other than his own statements.  On the other hand, the arrest warrant for Cause No. F00-23287 indicates that "the complainant observed a black semi auto pistol barrel that was half covered with a black toboggan."  (*See* Attach. T2 to Supp. Obj'ns (altered to lower case).) There is thus some independent indicia that petitioner possessed a weapon despite his contention to the contrary.  Because petitioner does not contest that he committed two robberies, there is no dispute that a reasonable juror could convict petitioner of robbery.  Furthermore, based upon testimony from the complainant that petitioner used a pistol, a reasonable juror could also convict petitioner of aggravated robbery despite contrary testimony from petitioner that he used a magic-marker, not a pistol.  When faced with conflicting testimony on a material element of an offense, a reasonable juror could disbelieve the defendant's testimony and find the contrary testimony credible. Consequently, petitioner cannot use his claim of actual innocence as a gateway through which he may bring defaulted claims even if the Court considers all of the evidence that could have been presented at trial, rather than requiring new evidence of innocence.

The Court notes that, to some extent, petitioner's arguments against his aggravated robbery conviction challenge the sufficiency of the evidence to support that conviction.  The Supreme Court, however, has specifically indicated that the actual innocence inquiry is one of factual innocence, not mere legal insufficiency of the evidence.  *See Bousley v. United States*, 523 U.S. 614, 623 (1998).  Moreover, a voluntary guilty plea relieves the State of its burden to put forth evidence sufficient to sustain the conviction.  By entering a voluntary plea, a petitioner waives his right to demand any evidence to sustain his convictions.  *See United States v. Broce*, 488 U.S. 563, 569 (1989) (holding that "when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was

both counseled and voluntary"). Furthermore, a "failure of the Texas state court to require evidence of guilt corroborating a voluntary plea" raises "[n]o federal constitutional issue." *Smith v. McCotter*, 786 F.2d 697, 702 (5th Cir. 1986) (quoting *Baker v. Estelle*, 715 F.2d 1031, 1036 (5th Cir. 1983)). The "mandate that sufficient evidence exist from which a rational fact finder could find guilt beyond a reasonable doubt is inapplicable to convictions based on a guilty plea." *Id.* at 702-03. In this instance, the FCR found that petitioner entered his guilty pleas knowingly, intelligently, and voluntarily. (*See* FCR at 5-7.) As discussed more fully below, nothing in petitioner's objections provides a basis to alter that finding.

In conclusion, review of the petitioner's original federal filing makes clear that petitioner failed to raise his claim of ineffective assistance of appellate counsel. Thus, he cannot be heard to object to the Court's failure to consider it. Even if such issue had been raised initially, however, the Court finds that the ineffective assistance of appellate counsel claim has been procedurally defaulted.

## IV.  PROCEDURAL BAR

Petitioner also objects to the finding that Claims 2(a) (that he pled guilty because his lawyer erroneously told him he was eligible for a regular probation) and 2(c) (that he would have withdrawn his plea and proceeded to trial had he been given the opportunity) are procedurally barred. (Obj'ns at 6-8.) He argues that, because he has presented the "substance" of all of his claims to the Texas courts, the Court should find no claim procedurally barred from review. (*Id.* at 6-7.) He also infers that the Court did not consider exceptions to the procedural bar doctrine, and asserts that he has shown cause for the procedural default, resulting prejudice, and that consideration of his claims is necessary to prevent a miscarriage of justice. (*Id.* at 6-8.)

23

Contrary to his assertions, petitioner did not present the substance of these claims to the Texas Court of Criminal Appeals.  Furthermore, a review of his three state applications for writ of habeas corpus reveals that he did not present Claims 2(a) and (c) to the state courts.  Thus, this objection provides no basis to alter the finding that the claims are barred.

With regard to alleged failure to apply the recognized exceptions to the procedural bar doctrine, the Court notes that the FCR reflects application of these exceptions to the extent possible under the circumstances of this case.  Despite the Court's specific reference in the orders denying his motion for leave to withdraw or abate to respondent's procedural bar argument, and despite ample opportunity to contest or challenge the allegations of procedural bar, petitioner failed to do so.  Nevertheless, for the same reasons set forth in the discussion of petitioner's new claim of ineffective assistance of counsel, the Court also finds that petitioner's new evidence regarding his mental competency does not provide a basis to alter the Court's finding that he was competent to plead guilty despite his mental health issues.  Thus, petitioner has still not shown cause and prejudice or miscarriage of justice excusing the procedural default of Claims 2(a) and (c).  Accordingly, his objection on this basis should be overruled.

## V.  VOLUNTARINESS OF GUILTY PLEAS

Petitioner specifically objects that he did not voluntarily enter his guilty pleas.  (*See* Supp. Obj'ns at 3-7.)  He contends that he made statements in open court during sentencing which show that his plea to the aggravated robbery charge was made on "misconceptions" and that no one explained the nature of the offense to him.  (*Id.* at 3, 5.)  He specifically points to the following exchange regarding that charge:

Prosecutor:              At this time did you have a gun with you?

| | |
|---|---|
| Petitioner: | No sir. |
| Prosecutor: | Okay.  Now you realize, of course, in this case we have charged you with and you've pled guilty to using a gun? |
| Petitioner: | Yes, sir. |
| Prosecutor: | Okay. |
| Prosecutor: | No further questions, Your Honor. |
| Court: | All right. |
| Defense counsel: | Something else you would like to tell the Judge? |
| Petitioner: | Yes.  I don't know much about the law, but there was no gun, but the reason isn't there a statute says something if you exhibit it, something that looks like a gun, it's considered a gun? See, I'm not sure about how that law works when I pleaded that plea.  You know, it's, from I was told. |
| Defense counsel: | May I clarify this? |
| Defense counsel: | You and I talked about what your options were and at the time we thought it would be in your best interest to go ahead and plead guilty to the aggravated robbery charge as it was? |
| Petitioner: | Right. |
| Defense counsel: | Okay. |
| Petitioner: | Right.  Right.  Yeah. |
| Defense counsel: | Okay. |
| Petitioner: | How it was presented. |

(*Id.* at 4 (exchange found at RR-III at 10-12).)[15]  He argues that this exchange demonstrates that

he was not adequately informed as to the nature of the charges against him.  (*Id.* at 5.)

---

[15] Although petitioner does not cite to the last three lines of the exchange, the Court includes them for further context.

25

Petitioner further contends that he "pled guilty to aggravated robbery when there was no weapon involved in the commission of offense", that he "never admitted, during the plead [sic] colloquy, to the use or exhibition of a weapon in the course of offenses he pleaded guilty to,"[16] and that his actual innocence makes his plea involuntary.  (*Id.* at 5-6.)  He contends that the trial court allowed him to plead guilty against the weight of the evidence despite a "severe mental illness."  (*Id.* at 7.)  He further argues that his plea was unknowing and involuntary because it was based upon an unfulfillable promise of probation, and that he received no benefit to pleading guilty to aggravated robbery charge because such plea disqualified him for regular probation.  (*Id.* at 6-7.)  Finally, he argues that, although Fed. R. Crim. P. 11 "requires a federal court to ensure that there is a factual basis for a guilty plea", the trial court failed to do so.  (*Id.* at 5-6.)

After setting out preliminary matters in the FCR, the undersigned Magistrate Judge directly addressed the voluntariness of petitioner's pleas because his "claims necessarily implicate[d]" their voluntariness.  (*See* FCR at 5.)  The FCR set out applicable principles of law, and with citation to the state habeas record and the second volume of the reporter's record, found:

> The record reflects that Biter (1) was pleading guilty freely and voluntarily, (2) was aware of the applicable punishment ranges, (3) had not been promised anything in return for his guilty pleas and had not been coerced, (4) was mentally competent, (5) understood the plea admonishments, and (6) was aware of the consequences of his pleas.

(FCR at 5-6.)

As shown below, petitioner's arguments and objections provide no basis to reject these findings.

---

[16] Petitioner cites to the sentencing transcript rather than the transcript of the plea hearing.

26

## A.  <u>State Court Proceedings</u>

In this instance, petitioner appeared before a state magistrate and pled guilty to robbery and aggravated robbery.  *See* RR-II at 2, 9.  In both cases, petitioner entered an open plea to the charges against him,[17] and signed a written plea agreement which informed him of the court's written admonitions to him and set forth his statements and waivers.  *See* TR-23280 at 14-15; TR-23287 at 8-9.  Through those documents, petitioner stated:  "I affirm that my plea and my judicial confession are freely and voluntarily made and not influenced by any consideration of fear, persuasion, or delusive hope of pardon or parole."  *See* TR-23280 at 15; TR-23287 at 9.  The Acknowledgment sections of the written plea agreements provided:  "I have read and understood, and that my attorney has explained to me, all of the foregoing admonitions and warnings relating to my plea, and that my statements and waivers are freely and voluntarily made with full understanding of the consequences."  *See* TR-23280 at 15; TR-23287 at 9.  Defense counsel acknowledged that she had "consulted with the defendant" concerning his pleas and believed petitioner "to be competent."  *See* TR-23280 at 15; TR-23287 at 9.  The magistrate indicated that petitioner appeared "mentally competent" and understood "the nature and consequences of the charge[s]" and thus, found that petitioner made the pleas "freely and voluntarily."  *See* TR-23280 at 15; TR-23287 at 9.

Petitioner also signed a form entitled "Judicial Confession" for each case, which states:  "I . . . judicially confess that I committed the offense with which I stand charged exactly as alleged in the indictment."  *See* TR-23280 at 16; TR-23287 at 10.  Both the indictment and the judicial con-

---

[17]  In this case, petitioner's pleas were completely open with no recommended sentence by the State or any agreed sentence.  *See* TR-23280 at 14; TR-23287 at 8.

fession for the aggravated robbery offense indicated that petitioner used and exhibited "a deadly weapon, to-wit: a firearm." TR-23287 at 2, 10.

Before the state magistrate accepted petitioner's guilty pleas, the court examined petitioner as to its voluntariness. *See* RR-II at 5-10. The court noted the petitioner had signed various documents, and petitioner indicated that his attorney had explained the documents to him, and that he understood them. *Id.* at 5-6. The court orally admonished petitioner of the punishment range for each offense, including the possibility of a fine not to exceed $10,000. *Id.* at 6. It explained the implications of his open pleas: "Now, this is an open plea in each case, which means there's no plea bargain agreements in either case, and as such, if you are found guilty of both of these offenses the full range of punishment would be available to the Court in sentencing you in these two case." *Id.* Petitioner indicated that he understood those implications. *Id.* at 6-8. He thereafter entered his pleas of guilty, and indicated that he was entering them "freely and voluntarily." *Id.* at 9. The court then admitted his signed judicial confessions and stipulation of the evidence as evidence in each case. *Id.* After defense counsel indicated that she felt that petitioner was mentally competent to plead guilty, the magistrate accepted the pleas, found petitioner competent to enter them, found that petitioner freely and voluntarily made them, and found "the evidence in each case proves your guilt beyond a reasonable doubt." *Id.* at 10.

On November 3, 2000, defendant appeared before the trial court for sentencing. *See* RR-III at 3. The State asked the court to take judicial notice of the pre-sentence investigation report, and the court did so. *Id.* at 3-4. Petitioner then provided additional information regarding his mental health issues. *Id.* at 4-7. He specifically stated that he was taking six medications for a mental disorder, but had not been taking medication at the time of the offenses. *Id.* He explained that

because his "cognitive thinking is a lot clearer" when on the medication, he would not have committed the offenses had he been taking the medication. *Id.* at 8. He expressed why he believed the court "could risk putting [him] on probation" – (1) he is a non-violent person; (2) "when [he] pleaded guilty there was no firearm involved"; (3) he was not on his medication at the time of the offenses; and (4) he would abide by whatever conditions of probation that the court chose to impose. *Id.* at 6-9. After hearing the testimony, the court stated:

> Mr. Biter, there are some offenses that are just too serious to overlook. An aggravated robbery happens to be one of them.
> I can't say that I have no sympathy for you, I do. Anybody that has any kind of mental problems as you have, but I'm not able to overlook what you did and you did it twice. The Court does find you guilty of aggravated robbery and robbery as charged in each of the indictments.

*Id.* at 12. It sentenced petitioner to twenty years imprisonment on each charge, and made "an affirmative finding that a deadly weapon, a firearm, was used and exhibited by [petitioner] during the commission of the offense of aggravated robbery." *Id.* at 13.

Upon petitioner's second and third state applications for writ of habeas corpus, the trial court found that petitioner "knowingly and voluntarily entered" his pleas. S.H. Tr. II at 38; S.H. Tr. III at 38. It found that petitioner had been "thoroughly and properly admonished" as to the meaning and consequences of his pleas. S.H. Tr. II at 38; S.H. Tr. III at 38. In each case, the trial court secured an affidavit from defense counsel before considering the state writs. *See* S.H. Tr. II at 37; S.H. Tr. III at 37. In both underlying state habeas cases, defense counsel averred:

> In regards to Mr. Biter's ground one, this plea was made knowingly and voluntarily, I, as well as the Judge, admonished the Defendant of the full range of punishment. NO promises of probation were made to Mr. Biter. From our initial meeting and confronted with overwhelming evidence from the State, Mr. Biter admitted his guilt to me as his lawyer. We discussed all options, including trial. Mr. Biter decided he wanted to plea guilty and try to mitigate the offense in an open plea. He was in-

29

> formed the Judge could pronounce any sentence he felt justified (i.e. deferred proba-
> tion to life). Mr. Biter was fully admonished as to the consequences of aggravated
> time and that as the offense was one of 3G,[18] the only probation option would be
> deferred. Contrary to Mr. Biter's misdirected writ, he was, as the Court well knows,
> was [sic] eligible for a deferred probation after entering a guilty plea to the Court and
> going open for sentencing.
>
> Due diligence and every effort was taken in investigation of this case. All
> legal consequences, statutes applicable to Mr. Biter, etc. . . . were fully contemplated
> and applied.

S.H. Tr. II at 41; S.H. Tr. III at 41.[19] The trial court found counsel "trustworthy" and the statements

in her affidavits "worthy of belief." *See* S.H. Tr. II at 37; S.H. Tr. III at 37.

This Court presumes credibility findings of the state courts correct unless petitioner rebuts

them with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Although petitioner char-

acterizes the affidavit as "self-serving" and generally disagrees with the averments of counsel, (*see*

Supp. Obj'ns at 12-13), petitioner has not presented clear and convincing evidence that overcomes

the presumption of correctness. Thus, as initially stated in the FCR, the Court accepts the state

court credibility finding and finds, based upon the affidavit of counsel, that no one promised proba-

tion to petitioner. Consequently, the Court cannot find that petitioner's pleas were based upon any

promise of probation, fulfillable or not. In addition, although petitioner may have been ineligible for

regular probation, *see* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(1)(F) (Vernon Supp. 1999)

(showing that the provision for judge-ordered community supervision does not apply to defendants

adjudged guilty of aggravated robbery), he remained eligible for deferred adjudication probation, *see*

---

[18] The reference to "3G" appears to refer to TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3g – the state statute which
eliminates regular probation for certain offenses, including aggravated robbery.

[19] The Court has omitted internal quotation marks from the quoted affidavits.

*id.* § 5 (showing that deferred adjudication probation was available).[20]  His plea to the aggravated robbery charge thus provided some potential benefit to him although he remained subject to the full range of punishment for that offense.

Petitioner's objection (including the new supporting evidence) to the FCR's finding that he entered his pleas voluntarily is simply not supported by the record.  The totality of the circumstances reflects that petitioner had a clear understanding of the proceedings against him, the nature of the offenses for which he was charged, and the consequences of entering his pleas.  Although petitioner indicated at sentencing that "there was no firearm involved" in either robbery, RR-III at 7, he affirmatively stated the he understood that he was pleading "guilty to using a gun", *id.* at 11.  He thereafter expressed confusion as to whether the law requires an actual gun to be used, but conceded that he and his attorney had decided that it was in his best interest to "plead guilty to the aggravated robbery charge as it was."  *Id.* at 11-12.  Furthermore, he had signed a judicial confession in which he confessed that he used and exhibited a firearm in connection with the aggravated robbery offense.  TR-23287 at 10.  In that document, he also agreed and stipulated that the facts contained therein were "true and correct and constitute the evidence in this case."  *Id.*  As reflected in that judicial confession, petitioner did admit to the use or exhibition of a weapon.  The record reflects that petitioner was adequately informed about the nature of both offenses and chose to plead guilty.

Furthermore, petitioner has also not overcome the presumption of verity accorded solemn declarations made in open court.  *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) (holding that

---

[20] As for petitioner's objection based upon an unfulfillable promise, petitioner is mistaken to the extent he believes that probation was unavailable in any form.  The Court notes, furthermore, that the original petition filed in this action reflects that petitioner understood that he "was eligible for a deferred probation", (Pet. at 7), although his objections argue that the promise of probation was unfulfillable.

"[s]olemn declarations in open court carry a strong presumption of verity [and] [t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal"). He has not overcome the presumption of regularity and "great weight" accorded state-court records. *See Bonvillain v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that state-court records are "accorded great weight"); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that state-court records "are entitled to a presumption of regularity"). Petitioner's contention that his pleas were involuntary and the result of promises of probation is unsupported by the record and contradicts his statements in open court. Such contention also contradicts the signed plea agreements that he entered his pleas "freely and voluntarily."

Given the totality of the circumstances, it is evident that petitioner fully understood the charges against him and the consequences of his pleas. Thus, his pleas appear knowing, intelligent, and voluntary. Petitioner has presented nothing in support of his objections which overcomes the solemn declarations he made in court or the stipulation of facts set forth in his judicial confessions. As previously found, furthermore, petitioner has not shown that he was mentally incompetent to plead guilty or that he is actually innocent of the offenses to which he pled guilty. In addition, a claim of actual innocence does not necessarily make his pleas involuntary.

**B. <u>Fed. R. Crim. P. 11</u>**

Petitioner also argues that his pleas are involuntary because the trial court failed to comply with the requirement of Fed. R. Crim. P. 11 that it find a factual basis for the pleas. The Court first notes that, Rule 11 of the Federal Rules of Civil Procedure has no applicability in state courts, and non-compliance with it is thus immaterial to petitioner's pleas except for requirements mandated by the United Stated Constitution. As already noted, furthermore, a "failure of the Texas state court

32

to require evidence of guilt corroborating a voluntary plea" raises "[n]o federal constitutional issue." *Smith v. McCotter*, 786 F.2d 697, 702 (5th Cir. 1986) (quoting *Baker v. Estelle*, 715 F.2d 1031, 1036 (5th Cir. 1983)). The "mandate that sufficient evidence exist from which a rational fact finder could find guilt beyond a reasonable doubt is inapplicable to convictions based on a guilty plea." *Id.* at 702-03. Consequently, a failure to establish a factual basis for a plea does not render the plea involuntary. In this instance, moreover, the trial court established a factual basis for petitioner's pleas by considering his signed judicial confessions.

For all of the above reasons, petitioner's objections, arguments, and contentions present no basis to alter or reject the finding that petitioner voluntarily pled guilty.

## VI.   INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Petitioner objects that the FCR improperly considered his claim that trial counsel rendered ineffective assistance by persuading him to plead guilty with a promise that he would receive probation and then failing to seek probation. (Supp. Obj'ns at 7-11.) He also now asserts that his attorney provided "substandard" representation by failing to adequately advise him regarding his plea and failing to adequately investigate the facts of the case, including his history of mental illness, a possible insanity defense, and the fact that he used no firearm during the commission of the alleged crimes. (*Id.* at 8-11.) As already discussed, these assertions have expanded the nature and scope of petitioner's claim of ineffective assistance of trial counsel. Nevertheless, the Court examines these new allegations as if initially raised in the original federal petition.

A guilty plea is "open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.'" *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980) (quoting *McMann v. Richardson*, 397 U.S. 759, 770-71 (1970)). With respect to such pleas, "[c]ounsel is needed so that

33

the accused may know precisely what he is doing, so that he is fully aware of the prospect of going to jail or prison, and so that he is treated fairly by the prosecution." *Argersinger v. Hamlin*, 407 U.S. 25, 34 (1972).  However, as stated in the original FCR, once a criminal defendant enters a knowing, intelligent, and voluntary guilty plea, all non-jurisdictional defects in the proceedings below are waived except for claims of ineffective assistance of counsel relating to the voluntariness of the plea. *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000); *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993); *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983).

> When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

To successfully state a claim of ineffective assistance of counsel under existing precedent of the United States Supreme Court, petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The *Strickland* test applies when a petitioner alleges he was denied effective assistance of counsel in the context of a guilty plea.  *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985). "[I]n a guilty plea scenario, a petitioner must prove not only that his attorney actually erred, but also that he would not have pled guilty but for the error."  *See Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994).

A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See* 466 U.S. at 696.  The Court may address the prongs

34

in any order.  *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).  To determine whether counsel's performance is constitutionally deficient courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance."  *Strickland*, 466 U.S. at 689.  Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."  *Id.* at 691.

When a prisoner challenges his plea based on ineffective assistance of counsel, the "prejudice" requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process."  *Hill*, 474 U.S. at 58.  To satisfy this requirement in the plea context, the prisoner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Id.*  "[I]n assessing prejudice in the context of a determination regarding a defendant's competency, the question is whether there was a reasonable probability that he would have been found incompetent to stand trial."  *Jermyn v. Horn*, 266 F.3d 257, 283  (3d Cir. 2001).  To show prejudice in the sentencing context, furthermore, petitioner must demonstrate "a reasonable probability that but for trial counsel's errors the defendant's non-capital sentence would have been significantly less harsh."  *Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993); *see also United States v. Grammas*, 376 F.3d 433, 438 n.4 (5th Cir. 2004) (holding that *Spriggs* survived *Glover v. United States*, 531 U.S. 198 (2001) in the § 2254 context).  Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel.  *Strickland*, 466 U.S. at 695-96.

As discussed in the original FCR and preceding sections of these supplemental findings, the Court has found that petitioner's pleas were knowing and voluntary, and that he was competent to

35

enter such pleas.  Petitioner has presented nothing to show that his original claim of ineffective assistance of counsel based on an alleged promise of probation to persuade him to plead guilty and a failure to seek deferred probation rendered his pleas involuntary.  Petitioner's new claims of ineffective assistance of trial counsel based on a failure to investigate his mental competency go to the voluntariness of his pleas; the Court likewise finds this new claim does not render his pleas involuntary.  In addition, the alleged failures to investigate the facts of the case or a potential defense occurred prior to petitioner's pleas do not relate to the voluntariness of his pleas, and petitioner's knowing, voluntary, and intelligent pleas waived any such non-jurisdictional deficiencies of counsel.

Moreover, the Court specifically notes that petitioner has shown no ineffective assistance of trial counsel, either by the allegations initially raised in the original petition or by the new allegations in the objections.  His claims state no deficiency of counsel within the meaning of *Strickland*.  Based upon the affidavit of counsel found credible by the state trial court, no one promised petitioner probation.  *See* S.H. Tr. II at 37, 41; S.H. Tr. III at 37, 41.  Counsel also averred that "[d]ue diligence and every effort was taken in investigation of this case."  *See* S.H. Tr. II at 41; S.H. Tr. III at 41.  Furthermore, counsel recognized petitioner's eligibility for deferred probation, *see* S.H. Tr. II at 41; S.H. Tr. III at 41, and pursued probation at sentencing, *see* RR-III at 6-9 (asking petitioner questions regarding placement on probation).  In the absence of a deficiency of counsel, a claim of ineffective assistance of counsel necessarily fails.

In addition, petitioner has shown no prejudice from any alleged deficiency of trial counsel, whether raised originally or only in his objections.  He has not shown a reasonable probability that, but for the alleged errors of counsel, he would have pleaded not guilty and insisted on going to trial.  To the extent the claims relate to deficiencies at sentencing, he has demonstrated no reasonable

36

probability that but for alleged errors of counsel his sentence would have been significantly less harsh.  To the extent the claims relate to his competency, he has shown no reasonable probability that he would have been found incompetent to stand trial.  In the absence of prejudice to petitioner, a claim of ineffective assistance of counsel fails.

In conclusion, neither petitioner's objections regarding the consideration given to his original claims or his new claims of ineffective assistance of trial counsel provide any basis to alter the Court's previous findings.

## VII.  TRIAL COURT ERROR

Petitioner also objects to the consideration given in the FCR to his claims of trial court error. (Supp. Obj'ns at 11-14.)  He specifically disagrees with the FCR's statement that the trial court made factual findings and concluded that he was properly admonished.  (*Id.* at 11.)  He argues that the findings of the trial court are unsubstantiated and contrary to the judicial record.  (*Id.*)  He suggests that the trial court never informed him that he was ineligible for probation.  (*Id.* at 12.)

In the original FCR, the Court found no merit to petitioner's claim of trial court error because petitioner had failed to show that his plea was involuntary.  (FCR at 8.)  The FCR correctly states that "the trial court made factual findings and concluded that Biter had been properly admonished."  *See* S.H. Tr. II at 38; S.H. Tr. III at 38.  As more fully discussed in these supplemental findings after consideration of petitioner's new evidence and claims, the Court continues to find that petitioner voluntarily entered his pleas.

Petitioner alleges that he was denied his due process rights when the trial court (a) failed to follow the plea agreement; (b) failed to properly admonish him regarding the availability of probation; (c) failed to allow him to withdraw his pleas; and (d) failed to grant the agreed probation.

(Pet. at 7.)   To show a violation of due process for the alleged errors of the trial court, petitioner must show that the errors rendered the criminal proceedings fundamentally unfair.   *See Cupit v. Whitley*, 28 F.3d 532, 536 (5th Cir. 1994) (holding that a fundamentally unfair trial violates the Fourteenth Amendment right to due process).   To be entitled to federal habeas relief due to a trial error, petitioner must show the error actually prejudiced him.   *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

The alleged failures of the trial court provide no basis for finding a due process violation. First, petitioner has shown no agreement for probation.   Second, by entering open pleas to the charges against him, the plea agreements contained no provision that the trial court had to "follow." Third, petitioner has shown no request to withdraw his pleas that would have prompted the trial court to consider allowing him to withdraw them.   Fourth, the admonishments given to petitioner did not render his pleas involuntary, unknowing, or unintelligent.   Petitioner has simply pointed to no error of the trial court that violated his rights to due process.   Petitioner has shown no prejudice from the alleged errors of the trial court.   He has not shown that his criminal proceedings were rendered fundamentally unfair.

For these reasons, petitioner's objection provides no reason to alter the Court's finding that any alleged trial court error does not entitle him to habeas relief.

## VIII.   STANDARD OF REVIEW

Petitioner also generally purports to object to the standard of review set forth in the FCR but makes no specific objection.   (*See* Supp. Obj'ns at 2-3.)   The standard of review and other legal principles applicable to habeas petitions are statutory and well-established.   To the extent that peti-

tioner asserts an objection to the standard of review utilized by the Court, any such objection provides no reason to reconsider the Court's findings.

## IX.  EVIDENTIARY HEARING

Petitioner also objects to the Court's failure to hold an evidentiary hearing.  (Supp. Obj'ns at 6.)  The Court, however, determined that an evidentiary hearing was unnecessary after reviewing the pleadings filed herein and the proceedings held in state court as reflected in the state-court records.  The failure to hold an evidentiary hearing provides no basis to reject or alter the FCR.

## X.  RECOMMENDATION

For the reasons stated in the Findings, Conclusions, and Recommendation dated April 20, 2005, as supplemented and modified herein, the undersigned Magistrate Judge **RECOMMENDS** that the Court **DENY** the request for habeas relief brought pursuant to 28 U.S.C. § 2254.

**SIGNED this 23rd day of January, 2006.**


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

39

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these supplemental findings, conclusions, and recommendation on petitioner by mailing a copy to him.  Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory, or general objections.   Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

40